21-17-23 United States of America v. Quintin Andre Conley Oral argument not to exceed 15 minutes per side Ms. Hamilton for the Defendant Appellant Good morning, Your Honors, and may it please the Court, Counsel My name is Michaela Hamilton, and I represent the Defendant Appellant, Mr. Quintin Conley I would like to reserve three minutes for rebuttal This entire investigation was based on pretext The stop was pretextual, the pat-down of Mr. Conley was pretextual The search of Mr. Conley's person and the search of Mr. Conley's vehicle was pretextual What difference does that make? For purposes of the scope of the stop, the pretext, as soon as the officers realized that the pretext for the stop was wrong They were required to find additional reasonable suspicion or probable cause to continue the traffic stop Well, to the extent that it was pretextual, wouldn't part of it have been the fact that he didn't have that there was suspicion that he was driving without a driver's license? That was part of the reason that the officers asserted after the fact And it was after the fact justification, after the lack of valid insurance turned out to be wrong When you say that it was asserted after the fact, that's different than saying that the officers didn't have knowledge of the lack of a driver's license Or at least that the records reflected that there was no driver's license at the time that he stopped him, correct? Yes, Your Honor So basically the way that the whole stop started is once the, as you can see on the video You can hear the officers discussing that they wanted to pull him over for the lack of insurance And specifically, Detective Liske ordered Trooper Rose to just stop him for no insurance I don't have any PC to search, but we'll get him driving and maybe just get an impound to search or something like that The officers knew they didn't have probable cause to search the car when they pulled him over And were looking for any way to create additional probable cause during the stop The moment that the insurance was provided, the officers were required to immediately end the traffic stop Because the pretext for the stop was wrong And again, the record does not show that there is any evidence that additional reasonable suspicion or probable cause Was found to continue detaining Mr. Conley at the time And so, I want to make sure I'm not misunderstanding you So, the fact that he was unable to produce an identification at that time In your mind, because he, or excuse me, is your argument that because he produced proof of insurance The officers were to ignore the fact that he didn't produce a driver's license? Mr. Conley was never actually asked for a driver's license He was asked for identification, that's true Correct, and when Mr. Conley was asked for identification, he explained he didn't know if he had it on him It did turn out to be in the vehicle, his Michigan ID was in the vehicle at the time And there was, he had a license in Arizona That was not, I don't know if it was in the car or on Ms. Williams Mr. Conley's wife and the passenger of the vehicle It may also have been on her person at the time But after the initial request for the identification The officers never asked for his license, for any identifying information about him And did not confirm his name until after he was already in the process of getting handcuffed So to the extent that they were finding ways after the fact to justify the continued search It was based on the lack of a driver's license But the pretext leading up to this was clearly presented to both of the officers during the discussion And leading up to the stop that it was solely based on the lack of insurance Instead of letting the facts guide the officers' actions Law enforcement acted first and found facts to justify those actions after Which is unlawful and contrary to this court's well-settled law The officers knew how to get around the Fourth Amendment And gave untruthful testimony to justify their actions after the fact The failure to produce the driver's license was merely an unsupportable after-the-fact justification Especially here where there is no evidence that the officers had any additional reasonable suspicion Let alone probable cause to continue detaining Mr. Conley after the insurance was presented In fact, Trooper Rose asked Mr. Conley to step out of the vehicle In the same breath that he confirmed that the vehicle was insured The district court erred in finding that Mr. Conley consented to the pat-down search Based on the temporal relationship between the officer's request and Mr. Conley's actions of putting his hands in the air This was not voluntary Compliance does not equal consent The custodial nature of the detention supports that it was not consent Mr. Conley was surrounded by two officers with a canine in the vehicle And other law enforcement officers were waiting in a parking lot nearby to come to the stop Trooper Rose exercised authority over Mr. Conley Detained him and commanded him to step out of the vehicle Mr. Conley did not believe that he was free to leave And no reasonable person would believe they were free to leave based on the totality of the circumstances here The district court erred by finding that Trooper Rose saw the scale before the pat-down began Which gave him the probable cause to search The reasonable suspicion or probable cause for searching Mr. Conley's person Hinged on a digital scale that was in the side pocket of the door That Trooper Rose testified he never saw prior to asking Mr. Conley to step out of the vehicle Now just to understand the facts The pretext, the pretextual nature of the stop was based on lack of insurance Once they stopped him, they had a right to request to see his driver's license And he couldn't produce that because he didn't have a valid driver's license And the officers were not required to let him drive off Since he didn't have a driver's license So far are we in agreement or not? So Mr. Conley did have an Arizona license, it was not on him at the time The Michigan ID, and again he was never asked for the license So had the officer followed up after the insurance was found And asked for additional, circled back to ask for the driver's license Or additional identification information Then we may not be here But instead of requesting the driver's license specifically Or following up on information that would allow them to look up the information in the lien system The officers continued with the search, asked him, told him to get out of the car Patted him down, and continued with their search Okay, but they had a right to ascertain before they let him go Whether or not he had a valid driver's license, correct? Yes your honor, they have a right to ask that But they did not ask him, they never asked him for his driver's license here So you're saying that the lack of a driver's license was ascertained during the pat-down Is that what you're saying? No, it was not ascertained during the pat-down It was not ever requested by Trooper Rose As he testifies at the motion to suppress hearing Mr. Conley was never asked for a driver's license And the first time that the officers asked for his name Was after he was already in the process of getting handcuffed After he had been searched And after the drugs had been illegally obtained from his pocket So your argument is that the legality of what transpired Depends upon whether your client provided consent for the search Is that what it comes down to? Yes your honor, and I would argue that he did not consent to the search Based on the totality of the circumstances He was told to step out of the car And he was commanded to put his hands on the car while he was patting down To be checked for weapons Trooper Rose later testified at the suppression hearing That he gained probable cause to search Mr. Conley's person When he saw the scale that was in the side pocket of the door But didn't they find out before they stopped him Under the lean situation that the Jeep itself lacked valid insurance? The lean did incorrectly state that the vehicle lacked valid insurance But the passenger of the vehicle produced the insurance within a few minutes Later though, did the passenger produce the insurance? Yes your honor But by that time they already had your client out of the car, didn't they? They asked him to step out of the car immediately after they confirmed that the car was insured So in the same breath that the... Or thought he didn't From a valid lean search They asked him to get out of the car What's wrong with that? At the point where they provided the proof of insurance Which was the pretext for the stop The stop should have ended immediately Because they had no additional reasonable suspicion or probable cause Well the lean gave them the reasonable suspicion, didn't it? But once the valid insurance was produced But when in the facts did the valid insurance... When was it produced? Before or after he got out of the car? It was produced before they asked Mr. Conley to step out of the car At the same time that they asked him for the insurance They asked for ID, is that correct? They asked him for ID before they asked for... Well first the officer asked for the paperwork for the car Then they asked him for his ID And Mr. Conley was trying to find it in the car Did he produce an ID? I hear you saying that there was an ID Did he produce an ID? No, he did not produce an ID So didn't the officers... Have the authority to continue in investigating Since he didn't produce any ID Whether it was a driver's license or otherwise? They would have, yes your honor, in certain circumstances But here they never asked for any additional identifying information They didn't ask for his birth date They didn't ask for his social security number Or anything that would confirm who he was Because they knew who he was They had been following him for two weeks And were waiting for a time that they could stop him To try to search his car Ordinarily when police officers stop someone who's driving a vehicle And they ask for identification Is it your position or your understanding That what they're typically asking for is just a state ID? When did they find out there was a valid license? So they did not ever... After they asked for his identification the first time They never asked for any form of identification Driver's license or otherwise They stopped him because the lien said he didn't have a valid license The jeep didn't have a valid license The initial... In the video the sole reason for the stop Was because the vehicle lacked valid insurance Based on the officer's testimony and their conversation beforehand The request for a driver's license And him driving without a valid license Was never followed up on He was never issued a ticket for that The trooper Rose testified that he could have... Did the jeep have a valid license on it? He had a license that was issued in Arizona That was not... And he also had his Michigan ID He was never asked to produce an ID or a license Again after he was initially asked that first time And when trooper Rose initially asked him Trooper Rose testified that the lack of identification Constituted an arrestable offense that Mr. Conley Could have been taken into custody on scene for But he did not testify that he would have taken him into custody For failure to produce a license Or that he was taken into custody for failure to produce a license He was never... Again he was never asked for a license And hindsight is 20-20 Trooper Rose was never... Indicated that this was actually one of the reasons that he stopped Mr. Conley When trooper Rose ordered Mr. Conley out of the car He did so so he could check him for weapons The officers want this court to believe that These are photos of the scale that he saw In the way that it was depicted on the night of October 7th of 2021  In this form on that night In the two seconds that Mr. Conley was told to step out of the car I would urge this court to watch the video To see how quickly this all occurred And to see that trooper Rose's testimony was not credible Well the video that we have is from the dash cam isn't it? It's not from what the officer saw It's not his perspective is it? It is from the dash cam your honor And from the dash cam you can see that there is no light that is shining Between Mr. Conley and where the side of the door is During the video you can also see that there is no overhead light Trooper Rose never shines a flashlight on the side of the door There is nothing that indicates that Trooper Rose looks down at the door And he testifies that while Mr. Conley was stepping out of the vehicle He was looking at him and anything that he could potentially access weapons If you see the video The video will show that Trooper Rose was focused As officers are trained on Mr. Conley's face and hands To make sure that he did not have any weapons on him at the time And I would ask the court to View the video and View the facts in light of the depiction Those depicted in the videotape As instructed in Scott v. Harris Because the video will show that there is no way That Trooper Rose could have seen the sliver Of a piece of plastic in the bottom of the door Where there was no independent light shining on it It was dark and he was focused on Mr. Conley's hands And his person Realizing their mistakes the officer found facts What prompted the district judge to find the other way? I think the district court judge was wrong He was basing his Decision on Trooper Rose's testimony At the suppression hearing But you're saying the physical evidence Shows that it's not true? Are you saying the judge acted improperly? The physical evidence, as you can see in the video Indicates that that was not true But why would he do that? We've got to exercise our discretion As he exercised his So I need some reason why he would Fabricate his finding I don't think that he was fabricating his finding But the district court judge at some point admitted That he had not seen the full dash camera video And if you watch the video it's very clear What Trooper Rose was able to see And what would be improbable for him to see Based on the totality of the circumstances that night And Trooper Rose did not make any mention Of the scale until 18 minutes and 50 seconds Into the dash camera video Which was 15 minutes after Mr. Conley was asked  And I see Your time is up My time is up Good morning, your honors And may it please the court Stephanie Carowan from Grand Rapids, Michigan Appearing this morning on behalf of the United States Your honors, the traffic stop of Mr. Conley's vehicle And the subsequent pat down of his person were proper As the district court properly found based on the evidence It had before it. In October of 2020 Mr. Conley was driving without a valid license And without valid insurance Based on the lien information that officers had That was their belief about the validity of both the insurance And the license situation of Mr. Conley The officers stopped Mr. Conley To investigate both of those violations The record is clear on that particular point Trooper Rose testified extensively that he stopped Mr. Conley Both for the insurance violation, which he told Mr. Conley about And the license issue, which he did not And he also explained why he didn't tell Mr. Conley About the license violation when he first approached the driver's side window He stated In his testimony, which was credited by the district court That he in fact didn't tell Mr. Conley about the license issue Because at that point in a normal traffic stop He wouldn't have had information about a license And so to protect the larger drug trafficking investigation He didn't want to come up to Mr. Conley and say I know you don't have a driver's license The fact of the matter is Mr. Conley doesn't have a driver's license Or didn't. He in fact never claimed during the course of the traffic stop That he had a license on him He actually said in response to Trooper Rose's question About producing his identification That his ID was in the building Where they had to sign in, the apartment building that he was coming from He actually acknowledged not having a license on him Which is in and of itself an arrestable offense I also wanted to address The Arizona license issue that's been raised by the defendant Both here in this court and in the district court below But there is no evidence on the record Other than counsel's assertions that there is an Arizona license No Arizona license was produced before the district court To review it It was never shown to the district court Or shown to Trooper Rose either as part of the traffic stop Or as part of the evidentiary hearing Instead, if your honors look at page ID 410 and 411  Was that Conley, and I'm quoting It had some issue that was later cleared up But at that point, he didn't have a valid driver's license So we are not making that argument, your honor They conceded he did not have a valid driver's license That was the reason that Trooper Rose Then asked him to step out of the vehicle So that he could continue to investigate the licensure issue As he stepped out of the vehicle Trooper Rose was able to see that digital scale Right in the driver's side door pocket As exemplified in Exhibit 3, which is in the government's brief Well, what of defense counsel's argument That there is really no way that the Trooper could have seen that I understand that he testified to that, and we have that picture But based upon the darkness and everything else That the video really undercuts that A couple of things I would say to that, your honor First of all, it's a factual finding And in this particular case, the district court heard the testimony Of Trooper Rose, that he was able to see it As Mr. Conley opened the door, and the district court credited that There's nothing on this record that that factual finding Is clearly erroneous, or would allow this court To supplement its judgment for the district court On that particular factual point I would also point out some additional facts that the court should consider Trooper Rose actually talked about Activating his spotlights when he initiated the traffic stop So there were lights illuminating the side of the door At the time of the traffic stop And the government acknowledges seeing the digital scale was quick But it makes sense that Trooper Rose Would have looked at the driver's door In addition to Mr. Conley's hand Why? Because the driver's door is one place a weapon can come from It's not a place that Trooper Rose could have seen Prior to Mr. Conley opening the door So he's absolutely going to look not only at Mr. Conley's hands For a weapon, but anywhere a weapon can come from very quickly And he's trained to do both of those things simultaneously There's nothing that indicates that that finding By the district court is clearly erroneous In this particular case Once Mr. Conley is out of the vehicle Defense counsel raised the issue of consent I wanted to talk about that a little bit First of all, he was asked to step out of the vehicle The video shows, would you mind stepping out real quick? It's a question, it's not a command There's nothing aggressive on the part of Trooper Rose There's no gun drawn, there's no 15 other officers in the vicinity Or anything like that to indicate coercion Mr. Conley gets out, he's then asked Do you have any weapons on you? He says no Trooper Rose then says, mind if I check real quick Again, a very conversational tone and a question Mr. Conley says, no or yeah Whichever the affirmative would be Depending on how the phrasing would be And immediately raises his arms Indicating a consent to the search of his person And that's what the district court found Having reviewed the first few minutes of the video Is there some case law or authority Indicating that raising of the arms is consent? There are a number of cases that I would point the court to I think we pointed out In Drayton, which was in our briefing Again, the defendant there was asked, mind if I check you And lifted his hands from his legs At that particular point, and the court found That was consent by action Rather than by words, and either of those will work For purposes of consent In this case, you have both So I would point the court to the Drayton case on that point Mr. Conley was then patted down by Trooper Rose Who then finds methamphetamine on a plain field Pat down that the district court found was proper Once he's recovered that methamphetamine He then clearly has probable cause to search the vehicle Which leads to the recovery of the other items Including the cash, additional drugs, drug trafficking, paraphernalia And multiple firearms Your honor had asked my colleague What difference does it make about whether the stop or effect was Protectual or not, I would point out to the court It doesn't make any difference Wren is clear on that particular point That a protectual stop is okay Particularly here where you have multiple vehicular violations That the officers were investigating So for all of those reasons We would ask the court to affirm the district court's holdings As to the stop and the pat down and the recovery Do your honors have any questions about that particular issue? Are there any questions on the other sentencing issue Before I yield back the balance of my time? No? Then thank you very much Any rebuttal? Briefly your honors In Wren the supreme court found When the subjective motive for stopping a vehicle Is irrelevant when probable cause exists But in regards to seizures made without probable cause Or even reasonable suspicion There is no justification for the pretext Trooper Rose did not testify until the suppression hearing That one of the reasons that Mr. Conley could have been pulled over Was that they were aware of the secretary of state issue With the driver's license The information that the officers had at the time Was all based on unreliable tips That were unconfirmed and uncorroborated Everything that the troopers did Was trying to justify the search of Mr. Conley's person And the vehicle The compliance and consent issue Despite the fact that Mr. Conley was asked Or asked questions The questions and the context of the totality of the circumstances Did not make Mr. Conley feel like he had an opportunity To say no And based on Mr. Conley's experiences He would fear being in more trouble If he did not comply with the officers Demands to step out of the car After the troopers patted Mr. Conley down Which again He manipulated the tissue that was found in Mr. Conley's Sweatshirt pocket And continued patting him down after the fact He asked Mr. Conley Is this some weed instead of asking what is this Mr. Conley explained that no this is tissue The trooper continued to pat him down Where he subsequently found the money and drugs In Mr. Conley's pants pocket However all of this stems from the illegal pat down frisk And asking him to step out of the car Without having any additional probable cause That there was a scale visible Or that Mr. Conley had exhibited any Dangerous behavior throughout the short duration Of the initial part of the traffic stop At every step of the investigation The law enforcement predetermined Mr. Conley's guilt And relied on bad information and improperly obtained evidence Only finding after the fact justification To justify the stop, search and prolonged seizure Of Mr. Conley Even if the pretextual stop was lawful The moment that the pretext was found out to be wrong The officers were required to end the stop Everything after the proof of insurance was provided Is fruit of the poisonous tree and must be suppressed The district court's denial of Mr. Conley's motion to suppress Must be reversed for these reasons Thank you Thank you very much Ms. Hamilton I know you took this case Pursuant to the criminal justice act And I know you do that in service To our system of justice The court would like to thank you for taking the case The case may be submitted